NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JEFFREY E. AKARD,**

*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee*

---

2021-1383

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-6262, Judge Michael P. Allen.

---

Decided:  December 13, 2021

---

JEFFREY E. AKARD, New Castle, IN, pro se.

MARIANA TERESA ACEVEDO, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee.  Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., LOREN MISHA PREHEIM; AMANDA BLACKMON, Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before PROST, TARANTO, and CHEN, *Circuit Judges*.

PER CURIAM.

In 2013 and 2015, Jeffrey E. Akard, a veteran of the U.S. Army, requested that the Department of Veterans Affairs (VA) pay to his father the disability benefits being withheld from Mr. Akard during his incarceration. The relevant VA regional office (RO) denied his request for want of evidence that Mr. Akard's father was a dependent parent eligible for such "apportionment." Mr. Akard appealed to the Board of Veterans' Appeals, and the Board dismissed the appeal on the ground that he (unlike his father, who did not appeal) lacked a personal stake in the RO's apportionment ruling and so lacked standing to appeal the ruling to the Board. The Court of Appeals for Veterans Claims (Veterans Court) affirmed the Board's decision. *Akard v. Wilkie,* No. 19-6262, 2020 WL 5200711 (Vet. App. Aug. 27, 2020); Supplemental Appendix (SAppx.) 1–3. Mr. Akard appeals. We affirm.

I

In 1999, VA awarded Mr. Akard disability compensation based on what it found were service-connected low-back and right-shoulder conditions, for which VA assigned him a combined disability rating of 30%. Mr. Akard was later incarcerated after being convicted of several felonies. In April 2009, VA learned of Mr. Akard's incarceration and proposed reducing his benefit payments from 30% to 10%, as authorized by statute, 38 U.S.C. § 5313, and by regulation, *see* 38 C.F.R. § 3.665(a) (providing that compensation payable to veterans incarcerated for more than 60 days is limited according to 38 C.F.R. § 3.665(d)); *id.* § 3.665(d) (limiting the compensation payable to an incarcerated veteran with an evaluation of at least 20% to the rate under 38 U.S.C. § 1114(a), equal to a 10% rating). VA implemented the reduction in June 2009, and Mr. Akard does not contest the reduction.

In both 2013 and 2015, Mr. Akard requested that his withheld benefits—the difference between the 30% awarded and the 10% paid during incarceration—be paid to his father, who, Mr. Akard explained, became disabled in August 2009. SAppx. 8–9. The VA's "apportionment" regulation allows for some or all of the compensation not paid to an incarcerated veteran to be "apportioned" to a "dependent parent[]" on the basis of individual need. *See* 38 C.F.R. § 3.665(e)(1). The RO "accepted an apportionment claim from [Mr. Akard] on behalf of his father." SAppx 5. In April 2017, the RO, seeking to determine eligibility, asked that Mr. Akard's father complete a dependency form, VA Form 21P-509, *see* SAppx. 7, and there is no dispute here about the adequacy of notice to Mr. Akard's father of that request. Mr. Akard's father did not respond, and the RO denied Mr. Akard's apportionment request in May 2017, finding insufficient evidence of his father's eligibility. *Id.*

Mr. Akard filed a notice of disagreement, which the RO accepted for filing. *Id.* at 5. Whether by that filing or a separate appeal, Mr. Akard appealed the denial of apportionment to the Board.[1] Mr. Akard's father did not appeal. Indeed, in his brief in the Veterans Court, the Secretary stated that the RO failed to give Mr. Akard's father the required notice of the May 2017 denial at the time, providing that notice only in a June 2020 letter that informed Mr.

---

[1]    Congress made various changes in appeal procedures in the Veterans Appeals Improvement and Modernization Act of 2017 ("AMA"), Pub. L. No. 115-55, 131 Stat. 1105. The parties have not specified whether Mr. Akard's appeal to the Board proceeded under the pre-AMA or post-AMA version of 38 U.S.C. § 7105, one difference being that a formal appeal followed the notice of disagreement under the older version whereas no such separate formal appeal is required under the current version.

Akard's father of his still-live right to appeal.  Sec'y Br. at 7, *Akard,* 2020 WL 5200711 (19-6262).

The Board dismissed Mr. Akard's appeal in June 2019, citing 38 U.S.C. § 7108's directive that "[a]n application for review on appeal shall not be entertained unless it is in conformity with this chapter [38 U.S.C. §§ 7101–7113]."  38 U.S.C. § 7108; *see* SAppx. 4–5 (citing statute).  The Board reasoned that Mr. Akard did not have "standing" to appeal the denial of apportionment to his father.  *Id.* at 5.  To have standing to appeal a denial of apportionment, the Board said, an appellant must have a "'personal stake in the outcome of the controversy.'"  *Id.* (citing *Redding v. West*, 13 Vet. App. 512, 514 (2000) (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962))).  Here, the Board concluded, Mr. Akard did not show such a stake.  The Board explained that an apportionment award "is an entity which is legally separate from [the veteran's] benefits"; incarcerated veterans typically lack a "personal stake" in the benefits that have been properly withdrawn from them (as is undisputed here); and it is only such duly withdrawn benefits that are at issue in a request for apportionment to a dependent.  *Id.* (citing *Belton v. Principi*, 17 Vet. App. 209, 211–12 (2003) and *Ferenc v. Nicholson*, 20 Vet. App. 58, 64 (2006)).  The Board also found that there was no indication that Mr. Akard was his father's legal guardian, that Mr. Akard's father was his dependent, or that Mr. Akard was adversely affected by the denial of apportionment.  *Id.*  For those reasons, the Board dismissed Mr. Akard's appeal.  *Id.*

Mr. Akard appealed to the Veterans Court.  The Veterans Court affirmed the Board's dismissal of the appeal on August 27, 2020, agreeing with the Board that Mr. Akard "lacked a 'personal stake' in the decision to deny apportionment of benefits to his father."  *Akard,* 2020 WL 5200711, at *1–2.  While observing that Article III itself does not apply to administrative bodies such as the Board, *id.* at *1 n.14, the Veterans Court ruled that the Board had properly identified the "key concept" defining why Mr. Akard had no

right to appeal from the RO to the Board here: that he lacked a "personal stake" in whether his father received, as an apportionment, any part of the disability benefits that had been properly withdrawn from Mr. Akard. *Id.* The Veterans Court determined that *Belton* and *Ferenc*, cited by the Board, were dispositive in determining that Mr. Akard could not appeal the VA's apportionment denial to the Board. *Id.* at \*2. Rather, only Mr. Akard's father could contest the VA's denial of apportionment. *Id.*[2]

Mr. Akard timely appealed to this court.

## II

This court's jurisdiction to review decisions of the Veterans Court, defined by 38 U.S.C. § 7292, is limited. We have jurisdiction to decide an appeal insofar as it presents a challenge to a Veterans Court's decision regarding a rule of law, including a decision about the interpretation or validity of any statute or regulation. *Id.* § 7292(a), (d)(1). We do not have jurisdiction to review a challenge to a factual determination or a challenge to the application of a law or regulation to the facts of a particular case, except to the extent that an appeal presents a constitutional issue, which this appeal does not. *See* 38 U.S.C. § 7292(d)(2).

We liberally construe Mr. Akard's appeal to this court as suggesting a legal error in the Veterans Court's conclusion that, with exceptions not found applicable here, a veteran has no sufficient stake in securing apportionment to another (of disability benefits properly withdrawn from the veteran) to permit the veteran to appeal an RO

---

[2]  The papers before us do not indicate whether Mr. Akard's father has pursued an appeal to the Board after receiving the June 2020 notice of the May 2017 RO apportionment denial.

apportionment denial to the Board.  We see no legal error in that ruling.

The regulation governing reduction of benefits when a veteran is incarcerated, and providing for apportionment in such circumstances, refers to "the *rights of the person's dependents* to an apportionment while the person is incarcerated" and to the VA's duty to "notify *the person's dependents of their right to an apportionment*."    38 C.F.R. § 3.665(a) (emphasis added).  The regulatory language, on its face and sensibly understood, supports the Veterans Court's recognition, in this case and in the earlier cases deemed dispositive here, that the apportionment right belongs to the potential recipient, not to the veteran.  *See Ferenc v. Nicholson*, 20 Vet. App. 58, 63–64 (2006); *Belton v. Principi*, 17 Vet. App. 209, 211–12 (2003); *see also Batcher v. Wilkie*, 975 F.3d 1333, 1338 (Fed. Cir. 2020) (quoting *Belton*, 17 Vet. App. at 211) ("'[W]hen veterans' dependents file on their own behalf for an apportionment, they seek to exercise their right to an apportionment.'").

*Ferenc* and *Belton* are different from this case in one respect: they involved appeals *to the Veterans Court*, rather than (as here) an appeal *to the Board*.  The Veterans Court has adopted standing requirements of Article III of the U.S. Constitution, *see Hyatt v. Shinseki*, 566 F.3d 1364, 1367 (Fed. Cir. 2009), and a "personal stake" is generally an Article III requirement, *see Military-Veterans Advocacy v. Sec'y of Veterans Affairs*, 7 F.4th 1110, 1121 (Fed. Cir. 2021).  In contrast, as the Veterans Court stated in the present case, "Article III standing requirements don't apply to administrative bodies such as the Board." *Akard*, 2020 WL 5200711, at *1 n.14.

Mr. Akard has not shown, however, that the just-noted distinction makes a difference to the non-appealability determination in this case.  Article III is not the only source of limitation on appeal rights.  As a statutory matter, an appeal to the Board must be initiated by the "claimant"—

or "the claimant's legal guardian, or such accredited representative, attorney, or authorized agent as may be selected by the claimant or legal guardian." 38 U.S.C. § 7105(b)(2) (same in pre- and post-AMA versions). The ordinary meaning of "claimant" under that statutory provision does not encompass any person who files a claim but, rather, refers to the person who would receive the benefit if granted; otherwise, the specific statutory list of non-claimants who may appeal would make little if any sense.[3] Under that reading,

---

[3]    We have seen nothing in VA regulations adopting a contrary interpretation. Before VA adopted regulations in 2019 to implement the AMA, the regulation on "[w]ho can file an appeal" to the Board was similar to the statute, limiting the right to "a claimant personally, or . . . his or her representative if a proper Power of Attorney or declaration of representation, as applicable, is on record or accompanies" the filing. 38 C.F.R. § 20.301(a) (pre-AMA regulation). The post-AMA regulations moved that provision to 38 C.F.R. § 19.50(a) (post-AMA regulation), without material change. *See* VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (Final Rule).

Certain definitional regulations are consistent with tying the claim to the filer's own entitlement. A pre-AMA definitional regulation in Part 20, concerning the Board, defined "claimant" as "a person who has filed a claim," 38 C.F.R. § 20.3(g), and "claim" as an "application . . . for entitlement to . . . benefits," 38 C.F.R. § 20.3(f) (pre-AMA regulation), while a definitional regulation in Part 3, concerning Adjudication generally, said: "*Claim—Application* means a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit," 38 C.F.R. § 3.1(p). The post-AMA regulations conformed the Part 20 definition to the Part 3 definition. 38 C.F.R. § 20.3(g) (post-AMA version) (claimant is one who files "claim" as defined); *id.* § 20.3(f) (post-AMA version) (claim is request for

the statute limits an appeal of an apportionment denial to the person who would receive the apportionment and the short list of statutorily authorized stand-ins for that person—so that the veteran cannot initiate an appeal to the Board from a denial of an apportionment claim unless the veteran qualifies as one of the few people (such as a legal guardian) allowed to do so on behalf of the potential apportionment recipient. *See Redding*, 13 Vet. App. at 514–15 (discussing 38 U.S.C. § 7105(b)(2)), relied on in *Belton*, 17 Vet. App. at 211–12.

It is on that legal conclusion that we think the Veterans Court's ruling in this case, affirming the Board's ruling, should be understood to rest. The Board expressly relied on the failure of Mr. Akard to meet the appeal requirements of 38 U.S.C. §§ 7101–13. SAppx. 4–5. To support its determination, the Board found that there was no indication that Mr. Akard was his father's legal guardian. *Id.* at 5. The Veterans Court affirmed the Board's decision. Although the Veterans Court used "personal stake" language, we read that language, in the context of the Veterans Court's specific recognition that Article III is not applicable to the Board, simply as part of its adoption of the essential premise, established in the cited *Ferenc* and *Belton,* about who has the apportionment right—namely, the potential recipient, not the veteran. Once that premise is established, the statutory limitations on who may appeal to the Board barred Mr. Akard's appeal.

---

determination of "entitlement[] to a specific benefit"); *see* VA Claims and Appeals Modernization, 83 Fed. Reg. 39,818, 39,831 (Aug. 10, 2018) (Proposed Rule) ("VA proposes minor edits to § 20.3 Definitions, to remove terms that are no longer used in part 20, or are defined elsewhere in the part. VA also proposes to adopt the definition of 'claim' used in part 3 of this title."); Final Rule, 84 Fed. Reg. at 179.

We do not understand Mr. Akard to contend that he was the legal guardian of his father or that he played any of the other roles identified in the statute as permitting non-claimant appeals to the Board. He has not presented to us a question about such matters that would come within our jurisdiction, from which fact-specific questions are excluded (where, as here, no constitutional issue is raised). We have also considered Mr. Akard's references to 38 C.F.R. § 3.451 and 38 C.F.R. § 3.665(e)(1), but we do not see in those references any issue that is within our jurisdiction and affects the resolution of the decisive issue of appealability to the Board.

## III

For the foregoing reasons, the decision of the Veterans Court is affirmed.

The parties shall bear their own costs.

**AFFIRMED**